# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 15, 2022        Decided April 4, 2023

No. 22-8001

IN RE: VALERIE R. WHITE, INDIVIDUALLY AND ON BEHALF OF
ALL OTHERS SIMILARLY SITUATED, ET AL.,
PETITIONERS

———

On Petition for Permission to Appeal Pursuant to
Federal Rule of Civil Procedure 23(f)
(No. 1:16-cv-00856)

———

*Stephen R. Bruce* argued the cause and filed the briefs for petitioners.

*Jonathan K. Youngwood* argued the cause and filed the brief for respondents.

Before: SRINIVASAN, *Chief Judge*, MILLETT, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*:  Valerie White, Eva Juneau, and Peter Betancourt sought class certification to pursue various claims against the Hilton Hotels Retirement Plan ("Hilton Plan") for what they say are unlawfully denied vested retirement benefits.  The district court ultimately denied certification on the ground that the plaintiffs had proposed an

"impermissibly 'fail-safe'" class—that is, a class definition for which membership can only be ascertained through "a determination of the merits of the case," *In re Rodriguez*, 695 F.3d 360, 369–370 (5th Cir. 2012). *See White v. Hilton Hotels Ret. Plan*, No. 16-00856, 2022 WL 1050570, at *4 (D.D.C. March 22, 2022) (hereinafter "*White II*"). For example, a class defined as "those shareholders whom Company X defrauded" would be fail safe. If the named plaintiffs prevail on the merits by showing fraud, then the class is populated by all those with meritorious claims; if the named plaintiffs fail to prove fraud, there will be no class members to be bound by the adverse judgment.

White now seeks permission under Federal Rule of Civil Procedure 23(f) to appeal the district court's decision denying certification of a class. Finding this case an appropriate one for interlocutory review under Rule 23(f), we hold that the district court erred in enforcing an extra-textual limitation on class actions when faithful enforcement of Rule 23's specified terms and criteria for class actions would ensure the proper definition of a class early in the litigation that will be bound by a final judgment in the case.

**I**

**A**

Federal Rule of Civil Procedure 23 governs class action litigation in the federal courts. Rule 23(a) sets out four threshold requirements that all proposed class actions must meet: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

After passing that threshold, the proponents of a class must also show that the class qualifies as one of the three permitted types of class actions specified in Rule 23(b). *See* FED. R. CIV. P. 23(b)(1)–(3). A class can proceed under Rule 23(b)(1) if "prosecuting separate actions by or against individual class members" would cause confusion or in some way be impracticable. *See* FED. R. CIV. P. 23(b)(1). A Rule 23(b)(2) class is one that seeks declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds that apply generally to the class." FED. R. CIV. P. 23(b)(2). Lastly, a Rule 23(b)(3) class is authorized where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). This case concerns a request for certification under Rule 23(b)(2) as White seeks injunctive relief directing Hilton to vest and to recognize the putative class members' benefits. *See* Am. Compl. at 40–42.

Rule 23(c) provides that the decision to certify a class "must" be resolved "[a]t an early practicable time after a person sues or is sued as a class representative[.]" FED. R. CIV. P. 23(c)(1)(A). The order certifying a class "must define the class," as well as its claims, issues, or defenses. FED. R. CIV. P. 23(c)(1)(B). The Rule also requires that notice be given to all members of a (b)(3) class and allows the court to direct notice to members of (b)(1) and (b)(2) classes. FED. R. CIV. P. 23(c)(2).

Rule 23(d) and (e) govern the litigation, settlement, and dismissal of a class action. *See* FED. R. CIV. P. 23(d), (e). And Rule 23(f) governs when and how parties can obtain review of "an order granting or denying class-action certification[.]" FED. R. CIV. P. 23(f).

**B**

Valerie White is a former Hilton employee who alleges that Hilton wrongfully denied her vested retirement benefits. Specifically, White argues that both the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. ch. 18 § 1001 *et seq.*, and court rulings in related litigation required Hilton to apply an "hours of service" standard to her "fractional" (partial) years of service rendered before 1976, which Hilton refused to do. *See* J.A. 41–46. This, White maintains, led Hilton to undercount her years of service with the company so that she fell just below the ten-year work period needed for retirement benefits to vest.

Eva Juneau is a former Hilton employee who spent some of her employment years at what Hilton terms a "non-participating" Hilton property, which is an affiliated business where employment does not count toward a Hilton retirement plan. Juneau only qualifies for vested retirement benefits if Hilton counts service at its non-participating properties, which Juneau argues Hilton is bound to do by both ERISA and precedent.

Peter Betancourt is the son of Pedro Betancourt, who worked for Hilton for more than 30 years, but died without ever receiving retirement benefits from the company. This is because Hilton only recognized that it owed Pedro Betancourt retirement benefits when it was forced to review its records as part of a separate class action lawsuit against it. By that time, both Pedro and his wife, Peter Betancourt's mother, had passed. Still, when Peter Betancourt pursued a vesting claim on behalf of his late father, Hilton denied it because Peter was neither a beneficiary nor the surviving spouse of a beneficiary. Peter Betancourt asserts that denial violated ERISA.

White, Juneau, and Betancourt (collectively, "White") brought this putative class action under ERISA challenging Hilton's denials of  retirement benefits to themselves and others who suffered denials on the same bases.[1]

In September 2018, the district court summarily denied without prejudice White's initial motion to certify a class action pending its disposition of White's motion to amend the complaint because any amendment could affect the contours of a class certification order.  Order at 2–3, *White v. Hilton Hotels Ret. Plan*, No. 16-00856 (D.D.C. Sept. 28, 2018).  The district court ultimately denied the motion to amend, but it granted White's request for leave to file a renewed motion for certification.

White then filed a renewed motion for class certification under Federal Rule of Civil Procedure 23(b)(2).  White defined the proposed class as:

[A]ny and all persons who:

(a) Are former or current employees of Hilton Worldwide, Inc. or Hilton Hotels Corp., or the surviving spouses or beneficiaries of former Hilton employees;

(b) Submitted a claim for vested retirement benefits from Hilton under the claim procedures ordered by the District Court and the Court of Appeals in *Kifafi, et al., v. Hilton Hotels Retirement Plan, et al.*, C.A. 98-1517; and

---

[1] The claims are related to, but legally distinct from, those litigated in a separate class action over which the district court had previously maintained jurisdiction for seventeen years, ending in 2015.  *See generally Kifafi v. Hilton Hotels Ret. Plan*, No. 98-1517 (D.D.C.).

(c) Have vested rights to retirement benefits that have been denied by the Hilton Defendants':

(1) [u]se of "fractional" years of vesting service under an "elapsed time" method to count periods of employment before 1976 with no resolution of whether the fractions constitute a "year of service" under ERISA;

(2) [r]efusal to count "non-participating" service for vesting purposes notwithstanding that the service was with the "employer" under ERISA § 3(5), that the Hilton Defendants counted service at the same "Hilton Properties" in *Kifafi* and represented to this Court and the D.C. Circuit in *Kifafi* that Hilton had counted "non-participating" service with Hilton for vesting, and that the "records requested and received from Defendants do not identify any non-participating property that is also not a Related Company"; and

(3) [d]enial of retroactive/back retirement benefit payments to heirs and estates on the sole basis that the claimants are "not the surviving spouse" of deceased vested participants.

Proposed Order on Class Certification, *White v. Hilton Hotels Ret. Plan*, No. 16-00856 (D.D.C. Jan. 31, 2020).

The district court declined to certify that class, but expressly did so without prejudice to a renewed motion to certify. The chief flaw identified by the district court was that the class definition was "impermissibly 'fail-safe[.]'" *White v. Hilton Hotels Ret. Plan*, No. 16-00856, 2020 WL 5946066, at *3 (D.D.C. Oct. 7, 2020) (hereinafter "*White I*"). In particular,

the court objected to language that defined the class as those individuals who "have vested rights to retirement benefits that have been denied," given that whether retirement rights had vested was an issue to be resolved in the case. *Id.*

The district court afforded White a "final opportunity to renew [the] motion for class certification" in a manner that would cure the fail-safe problem in the class definition. *White I*, 2020 WL 5946066, at *1. The court also discussed "additional impediments to class certification it [had] identified at [that] stage of the litigation" for White to address, including commonality issues with one subclass and typicality issues with another. *Id.* at *1, *5–8.

White then filed an amended motion to certify. That motion edited the class definition to include individuals who:

(a) Are former or current employees of Hilton Worldwide, Inc. or Hilton Hotels Corp., or the surviving spouses or beneficiaries of former Hilton employees;

(b) Submitted a claim for vested retirement benefits from Hilton under the claim procedures ordered by the District Court and the Court of Appeals in *Kifafi*, *et al. v. Hilton Hotels Retirement Plan*, et al., C.A. 98-1517; and

(c) Have **been denied** vested rights to retirement benefits ~~that have been denied~~ by the Hilton Defendants':

(1) [u]se of "fractional" years of vesting service under an "elapsed time" method to count periods of employment before 1976 with no resolution of whether fractions constitute a "year of service" under ERISA;

(2) [r]efusal to count "non-participating" service for vesting purposes notwithstanding that the service was with ~~the 'employer' under ERISA § 3(5)~~ **a hotel property that Hilton operated under a management agreement**, that the Hilton Defendants counted service at the same "Hilton Properties" in *Kifafi* and represented to this Court and the D.C. Circuit in *Kifafi* that Hilton had counted "non-participating" service with Hilton for vesting, and that the "records requested and received from Defendants [do] not identify any non-participating property that is also not a Related Company"; and

(3) [d]enial of retroactive/back retirement benefit payments to heirs and estates on the ~~sole~~ basis that the claimants are "not the surviving spouse" of deceased vested participants.

*White II*, 2022 WL 1050570, at *2–3.

The district court denied White's motion to certify on the ground that the proposed class definition remained impermissibly fail-safe. *White II*, 2022 WL 1050570, at *4. The court added that other Rule 23(a) "problems with the second and third proposed subclasses" identified in the prior order continued to trouble the class definition, but "the Court need not reach them[.]" *Id.* at *6 n.5.

Fourteen days after the denial of class certification, White filed with this court a petition under Rule 23(f) for permission to appeal the denial of class certification. The district court, with the agreement of the parties, subsequently stayed its proceedings pending resolution of the petition on the ground that the question of "whether a fail-safe class definition is permissible is likely an 'unsettled and fundamental issue of law

relating to class actions' for which the Court of Appeals might be more inclined to grant appellate review." Order at 2, *White v. Hilton Hotels Ret. Plan*, No. 16-00856 (D.D.C. April 13, 2022) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 99–100 (D.C. Cir. 2002)).

## II

The district court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1). We have jurisdiction to consider this interlocutory appeal under 28 U.S.C. § 1292(e).

## III

At the outset, we must determine whether entertaining this interlocutory appeal is an appropriate exercise of our discretion under Federal Rule of Civil Procedure 23(f). After all, class certification orders are not final judgments. *See* 28 U.S.C. § 1291. Rather, both grants and denials of class certification are interlocutory orders, the likes of which appellate courts do not typically review prior to final judgment in a case. *Cf. id.* § 1292; *id.* § 1292(e). Rule 23(f), however, allows a party to file a petition for permission to appeal a class-certification order "within 14 days after the order is entered[.]" FED R. CIV. P. 23(f).

Once a timely request for review is filed, the court of appeals may exercise its discretion to hear the appeal "on the basis of any consideration that the court of appeals finds persuasive." FED. R. CIV. P. 23(f) & advisory committee's note; *see also* 28 U.S.C. § 1292(e).

This court adopted a framework for analyzing such requests in *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98 (D.C. Cir. 2002). There, we emphasized that

"interlocutory appeals are generally disfavored as 'disruptive, time[-]consuming, and expensive' for both the parties and the courts," and expressed concern that an overly generous approach could lead to "micromanagement of complex class actions as they evolve in the district court and inhibition of the district court's willingness to revise the class certification for fear of triggering another round of appellate review." *Id*. at 105 (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 294 (1st Cir. 2000)).

Given those concerns, this court ruled that Rule 23(f) review will "ordinarily be appropriate" when: (1) "there is a death-knell situation for either the plaintiff or defendant[,]" in that the class-certification decision will effectively end the party's ability to litigate; (2) "the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review;" or (3) "the district court's class certification decision is manifestly erroneous." *Lorazepam*, 289 F.3d at 105. We stressed, though, that those three categories only provide "guidance" and should not be treated as "a rigid test," since there may be "special circumstances" in future cases that also militate in favor of or against interlocutory review of a Rule 23(f) petition. *Id*. at 105–106.

Because the Rule 23(f) appeal in this case was timely filed, the question raised involves an important and recurring issue of law, the issue will likely evade end-of-case review for all practical purposes, and the circumstances taken as a whole warrant interlocutory intervention, we grant the petition for interlocutory review.

**A**

White's petition for review was timely. The district court entered its order denying class certification with prejudice on March 22, 2022, and White filed the petition for review on April 5, 2022, squarely within the fourteen-day time limit set by Rule 23(f).

To be sure, the district court had entered two earlier orders denying class certification without prejudice. *See* Order at 3, *White v. Hilton Hotels Ret. Plan*, No. 16-00856 (D.D.C. Sept. 28, 2018); *White I*, 2020 WL 5946066. But the district court was explicit in those orders that it had not yet conclusively resolved the class certification question. The first order simply recognized that a ruling on class certification would put the cart before the horse as the court had not yet ruled on a pending motion to amend the complaint. Order at 2–3, *White v. Hilton Hotels Ret. Plan*, No. 16-00856 (D.D.C. Sept. 28, 2018).

The second order came as part of an ongoing dialogue between the district court and White over potential problems with the class definition. The district court denied certification without prejudice as part of an express invitation to reformulate the class definition in a way that would address the court's concerns. *White I*, 2020 WL 5946066, at \*5.

In both instances, the district court made clear that it was not yet done deciding the class certification question, and that it wished to afford White a fair opportunity to formulate a class definition that could pass Rule 23 muster. Nothing in Rule 23(f)'s time limit suggests it was meant to intrude prematurely on the district court's judgment about how best to manage the progress of the case and to ensure that the Rules are administered "to secure the just, speedy, and inexpensive determination" of the action, FED. R. CIV. P. 1.

Hilton nonetheless argues that the petition was untimely. It reasons that the final March 22 order denying certification left "class action status unchanged from what was determined by [the] prior order" of October 7, 2020, and that "[a] later order that does not change the status quo will not revive the [fourteen]-day time limit." Hilton Br. 17–19 (citing *In re DC Water & Sewer Auth.*, 561 F.3d 494, 496 (D.C. Cir. 2009)); *see generally Strange on Behalf of Strange v. Islamic Republic of Iran, Interest Section*, 964 F.3d 1190, 1196–1197, 1202 (D.C. Cir. 2020) (for a 28 U.S.C. § 1292 interlocutory appeal, district court's rote recertification for appeal, without any substantive change in the order issued, did not restart the statutory deadline for seeking permission to appeal).

But the status quo did change between the October 2020 and March 2022 orders. The district court had not decided in its October order that a class could not be certified or that the problems with White's proposed class definition could not be cured. It ruled in that order only that the definition of the class needed to be adjusted and some other concerns addressed before a class could be certified. In the district court's words, the order afforded White "a final opportunity to renew [the] motion for class certification." *White I*, 2020 WL 5946066, at *1. So no definitive decision on class certification was made until the final order on March 22, 2022. That is a material difference.

Even more to the point, White changed the class definition after the October 2020 order. It was that new class definition that the district court considered and rejected for the first time in the March 2022 order of which White seeks review. And in denying that motion for class certification, the district court significantly changed the litigation status quo by definitively ending the prospect of class action status. In short, what matters is that, prior to the March 2022 order, the district court

had not yet made up its mind whether a proper class could be certified in the case. In the March 2022 order, it confronted a new proposed class definition and, in rejecting it, the court closed the door on class certification.

Nothing in *DC Water* says otherwise. In *DC Water*, there was only one order ruling on class certification. *See* 561 F.3d at 496. The defendant then moved for reconsideration, which the district court denied six months later. About seven months after the denial of the motion for reconsideration, the defendant filed a "Motion to Clarify the Relevant Class Members for Notice Purposes." *Id.* at 495. The district court summarily denied this last motion, and that is the decision for which the defendant sought Rule 23(f) review. We held that the petition—that came seventeen months after class certification was granted and sought review only of a denial of clarification—was out of bounds. The district court's decision did not restart the Rule 23(f) clock for the straightforward reason that it was not "an order granting or denying class action certification[.]" *Id.* at 496. The problem for the *DC Water* petitioner, in other words, was that it sought to use an order other than one granting or denying class certification to re-up the Rule 23(f) time period.

In this case, by contrast, the March 2022 order was indisputably a denial of class certification within the plain meaning of Rule 23(f). So it started the fourteen-day clock for filing a Rule 23(f) petition. And White filed her petition with this court before the buzzer went off.

Reading Rule 23 as Hilton proposes—to require an interlocutory appeal before the district court is even done wrestling with an issue—would make little sense. The disruption occasioned by interlocutory appeals would increase tenfold were parties obligated to petition for review from every

14

non-prejudicial and expressly non-conclusive ruling on class certification issued by the district court, out of fear of losing the chance to appeal later the one ruling that actually resolves the matter. Hilton nowhere explains how requiring White to have sought review of both the October 2020 order and the final order of March 2022 would promote the district court's sensible management of litigation or this court's efficient handling of interlocutory appeals.

Think about it: Had White appealed after the first order denying certification, there would have been no reasoning by the district court for us to review and any ruling would have been hopelessly premature. Had White appealed after the second certification order, the district court's constructive efforts to work through the difficult class-certification questions and to fully consider the possible class definitions would have been derailed. Neither the text of Rule 23 nor logic supports requiring the filing of petitions for review before the district court finishes its class-certification decisionmaking.

**B**

Timeliness is necessary for White to be eligible for interlocutory review, but it is not sufficient. This circuit also requires those seeking interlocutory review to demonstrate a "persuasive" reason for appellate intervention at this early juncture. *Lorazepam*, 289 F.3d at 102 (quoting FED R. CIV. P. 23(f) advisory committee's note). White has done so.

Turning to *Lorazepam*'s traditional factors, White's petition falls squarely within the second category of generally appropriate interlocutory petitions: Whether the district court properly adopted a rule against fail-safe classes is an unsettled, recurring, and "fundamental issue of law relating to class actions, important both to the specific litigation and generally,

and one that is likely to evade end-of-the-case review." *Lorazepam*, 289 F.3d at 105.

To start, the question whether Rule 23 prohibits fail-safe classes is a fundamental issue of law relating to class actions. In this case, the district court relied solely on the fail-safe character of the class definition to deny the motion to certify. *See White II*, 2022 WL 1050570, at \*4 ("[T]he Court concludes that Plaintiffs' proposed class remains impermissibly 'fail-safe,' as presently defined. This precludes certification."). So unquestionably, the existence of a fail-safe rule is important to the fate of *this* "specific litigation," *Lorazepam*, 289 F.3d at 105.

And no less so to class action litigation in general. While this court has not yet considered the question, nine other federal courts of appeals have issued varying opinions about such class definitions, demonstrating that the relevance of a class's fail-safe character is an important, recurring, and unsettled question of class action law. *See, e.g.*, *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015) (endorsing a rule against fail-safe classes); *Byrd v. Aaron's Inc.*, 784 F.3d 154, 167 (3d Cir. 2015) (same); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 n.9 (4th Cir. 2014) (instructing district court to consider possibility of anti-fail-safe rule on remand); *Rodriguez*, 695 F.3d at 369–370 (rejecting rule against fail-safe classes); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) (endorsing rule against fail-safe classes, but rejecting defendant's proposed application); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (recognizing fail-safe problem, but noting it can and often should be resolved by refining class definition, not denying certification); *Orduno v. Pietrzak*, 932 F.3d 710, 716–717 (8th Cir. 2019) (endorsing rule against fail-safe classes as independent bar to class certification); *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th

Cir. 2016) (recognizing fail-safe problem as other side of coin to over-inclusiveness in class definition); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1277 (11th Cir. 2019) (same).

Our district courts appear to be divided on the issue as well. *Compare White II*, 2022 WL 1050570, at \*4, *with Ramirez v. United States Immigr. & Customs Enf't*, 338 F. Supp. 3d 1, 49 (D.D.C. 2018) ("[I]t is not clear why Defendants might be harmed or at all disadvantaged by Plaintiffs' reliance on a fail-safe class definition[.]"), *and Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Pompeo*, 334 F.R.D. 449, 464 (D.D.C. 2020) (rejecting defendant's fail-safe argument as strain of implied ascertainability requirement that this circuit has never addressed). Perhaps that is why the district court in this case expressed the view that the fail-safe issue is the kind of fundamental question of class action law that it would be appropriate and helpful for this court to address. *See* Order at 3, *White v. Hilton Hotels Ret. Plan*, No. 16-00856 (D.D.C. April 13, 2022).

In addition, the fail-safe question is likely to evade end-of-the-case review.

To start, if the case is required to go forward as an individual action and the named plaintiffs prevail, they will have little incentive to bear the risk and expense of appealing the class certification denial. Especially since—even if they win on the merits and even if they also then win an appeal of the class certification decision—they would face the risk that the district court would find that their already-resolved claims are not typical of the other putative class members' or that they can no longer fairly and adequately represent the class given their different procedural posture. *See* FED. R. CIV. P. 23(a)(3) and (4). After all, neither party here has argued that the merits

litigation would leave some distinct category of class claims unresolved, nor does the complaint suggest such a distinction. *Cf. Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006) (settlement agreement preserved "Plaintiff's class claim" distinct from its resolution of her "individual claims").

To be sure, we have held that a would-be class plaintiff who settles claims retains an interest in appealing a denial of class certification if an interest in spreading the costs of litigation remains. *Richards*, 453 F.3d at 529; *see United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 404–407 (1980). But that interest in shared expenses is a different consideration from whether the already-successful plaintiff's legal interests in the merits of the case remain typical of the putative class members' unresolved legal claims to satisfy Federal Rule of Civil Procedure 23(a)(3) and (4). *See Geraghty*, 445 U.S. at 407 ("We need not decide here whether Geraghty is a proper representative for the purpose of representing the class on the merits.").

Of course, it is not *inconceivable* that a hearty plaintiff would assume the risk and successfully hurdle all of those obstacles. But the question under *Lorazepam* is not whether end-of-case review is impossible, only whether it is not "likely[.]" 289 F.3d at 105.[2]

For similar reasons, if the named plaintiffs lost their claims on the merits in individual litigation, they would have to possess the resources to continue litigating and also win the merits question on appeal to have any prospect of having the class certification question also reviewed. Otherwise, a merits

---

[2] The defendant that has opposed class certification here surely will not appeal the denial of class action certification either.

loss on appeal will make consideration of the class-certification question academic.  Nor could they viably choose to appeal just the important and fundamental class-certification question because, with the adverse merits ruling unchallenged, then the law of the case or principles similar to collateral estoppel could (again) make the typicality and adequacy-of-representation factors daunting hurdles to their class action going forward, *see* FED. R. CIV. P. 23(a)(3) and (4).  *Cf. Zenith Labs., Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976) (named plaintiff could not adequately represent class because prior litigation could be used as defense against named plaintiff's claims in way not true of class as a whole).

Nor, even assuming a defendant could challenge the class certification on appeal if liability is found, could we hold that an issue is subject to meaningful end-of-case review when only the defendant, and not the plaintiff, will be able to seek that review later.  To be sure, it might be possible for unnamed class members to intervene and appeal the class-certification question.  *See In re Brewer*, 863 F.3d 861, 868 (D.C. Cir. 2017).  But Hilton has made no argument that intervention by absent class members is viable in this case.  And even if there were reason to think intervention might occur, the nature of the fail-safe legal question at issue here is likely to evade meaningful end-of-case review anyhow.

The very character of the fail-safe legal question exists most critically at the early class-certification stage of a case.  The crux of the fail-safe critique is that a proposed class definition impermissibly depends on a determination on the merits of the case, so that class membership cannot be effectively identified and represented until the litigation ends.  For example, a class defined to include "all those discriminated against *illegally*" relies critically on a merits determination to set the contours of class membership.  But at the class

certification stage, a determination on the merits is far down the road, while the need to identify the class for procedural and substantive purposes is immediate. *See*, *e.g.*, FED. R. CIV. P. 23(c)(1)(B) and (2). In other words, the fail-safe concern is that the class definition is hopelessly indeterminate at the time the district court is required to resolve class action status and to define class membership—"a[s] early [as] practicable" after the proposed class action commences. FED. R. CIV. P. 23(c)(1)(A).

But should a fail-safe class proceed to final judgment, the merits will have been resolved. So the fail-safe concern—however cogent at the class certification stage—becomes muddied, or, at minimum, substantially diluted. If the problem with fail-safe classes is that they rely on merits determinations that are wholly unknown at class-certification time, that problem abates by final judgment. At the very least, it would be a different inquiry on appeal for this court to determine whether the class definition "all those defrauded illegally" is impermissibly fail-safe once a trial court has said whether fraud occurred or not. The question will have shifted. We would be in a strange posture indeed if forced to conclude a class definition was hopelessly indeterminate at time *a* however legible it has become at time *b*.

That presumably is why eight of the nine other circuits to have addressed the fail-safe issue—including the two circuits whose approach to Rule 23(f) review we endorsed in *Lorazepam*, 289 F.3d at 104–105—have done so on interlocutory appeals from grants or denials of class certification. *See Nexium*, 777 F.3d at 14; *Byrd*, 784 F.3d at 161; *Rodriguez*, 695 F.3d at 364; *Young*, 693 F.3d at 536; *Messner*, 669 F.3d at 808; *Ruiz Torres*, 835 F.3d at 1132; *Cordoba*, 942 F.3d at 1264; *cf. EQT*, 764 F.3d at 356–357 (granting 23(f) petition on basis that district court decision was

manifestly erroneous); *but see Orduno*, 932 F.3d at 716–717 (court *sua sponte* raised potential fail-safe issue as reason plaintiff's predominance problems could not be solved when reviewing class certification denial after trial on the merits).

Finally, we note that the *Lorazepam* scenarios are neither rigid categories nor exhaustive of the situations for which Rule 23(f) review can be appropriate. *See Lorazepam*, 289 F.3d at 105; *cf. In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 250 (D.C. Cir. 2013) ("The [*Lorazepam*] categories are mutually reinforcing, not exclusive. * * * [T]he confluence of multiple rationales may fortify our decision—the sort of 'special circumstances' contemplated by our case law."); *In re Veneman*, 309 F.3d 789, 795 (D.C. Cir. 2002) (noting that a fundamental issue of law unlikely to evade end-of-case review could nonetheless be appropriate for 23(f) review in "special circumstances"). Given the purely legal question presented for review, its high likelihood of recurrence within the courts of this circuit, its dispositive role in foreclosing a class action in this case, its importance as a matter of class action law for this circuit going forward, the severe and one-sided practical prohibitions on end-of-case review, the shape-shifting that the legal question would undergo by the conclusion of litigation, and the lack of prejudice to the district court proceedings given the district court's decision—with the parties' agreement—to stay the case pending our review, we conclude that granting the petition is warranted in the circumstances of this case.[3]

---

[3] Given our decision, we need not address White's additional arguments that the denial of class certification here also qualifies for interlocutory review under the *Lorazepam* manifestly erroneous and death-knell criteria. *See* 289 F.3d at 105.

21

**IV**

We review class certification decisions for an abuse of discretion. *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979); *Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006). A material error of law is always an abuse of discretion. *Koon v. United States*, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law.").

We hold that the court abused its discretion by denying the amended class certification motion based on a stand-alone and extra-textual rule against "fail-safe" classes, rather than applying the factors prescribed by Federal Rule of Civil Procedure 23(a). Rule 23 provides strong protection against circular or indeterminate class definitions, which the district court understandably sought to avoid.

**A**

Rule 23(a) of the Federal Rules of Civil Procedure sets out the indispensable "prerequisites" for class certification. FED. R. CIV. P. 23(a). They are (1) numerosity, meaning that the "class is so numerous that joinder of all members is impracticable[,]" (2) commonality in that the "questions of law or fact" at issue in the case are "common to the class[,]" (3) typicality, which requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class[,]" and (4) adequacy in that the named representative parties "will fairly and adequately protect the interests of the class[.]" FED. R. CIV. P. 23(a). Even after the Rule 23(a) requirements for certification are met, putative class members must still show that their action is maintainable under one of the class-action types identified in Rule 23(b). And Rule 23 expressly directs that the definition of a class be determined

and that its members be identified or identifiable early in the litigation, not at its end. *See* FED. R. CIV. P. 23(c)(1)(A).

**B**

Courts have identified two main problems with certifying a so-called "fail-safe" class, the membership of which depends on the merits. First, if membership in a class depends on a final resolution of the merits, it is administratively difficult to determine class membership early on. *See Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 492–497 (7th Cir. 2012). Second, if the only members of fail-safe classes are those who have viable claims on the merits, then class members either win or, by virtue of losing, are defined out of the class, escaping the bars of *res judicata* and collateral estoppel. *See Young*, 693 F.3d at 538. Heads they win; tails the defendant lose—at least, that is the concern.

To illustrate, for a class definition that encompasses "all those whom Company X defrauded," the "defrauded" addendum makes the definition circular. That is, whether or not certain actions constitute fraud, a tortious activity for which Company X would be subject to liability, is just what the litigation is meant to find out. As for *res judicata* effect, if a defendant is found not to have defrauded anyone, then there would be no class members at all. Every erstwhile class member would, after the merits determination, become a stranger to the case who would not be bound by that litigation loss.

Those concerns are understandable. In practice, though, a fail-safe class definition is only truly troubling to the extent it hides some concrete defect with the class. Rule 23 is a carefully structured rule that, properly applied, already addresses relevant defects in the class definition. And

23

enforcing the Rule's written requirements is greatly preferred to deploying a textually untethered and potentially disuniform criterion, the contours of which can vary from case to case. *Cf. Jones v. Bock*, 549 U.S. 199, 212–216 (2007) ("[C]ourts should generally not depart from the usual practice under the Federal Rules on the basis of perceived policy concerns[,]" *id.* at 212.). Instead, courts should stick to Rule 23's specified requirements when making class certification decisions and, in doing so, will likely find any "fail-safe" concerns assuaged.

Start with Rule 23(a)'s prerequisites. The putative class prosecuting the action—that is the class as defined at the beginning of the case, FED. R. CIV. P. 23(c)(1)(A)—must be too numerous for individualized litigation to be practicable. FED. R. CIV. P. 23(a)(1). That numerosity must exist throughout the litigation. Yet a class that could be defined to have zero members if the plaintiffs lose is not numerous at all.

Similarly, a circular class definition could reveal the lack of a genuinely common issue of law or fact. *See* FED. R. CIV. P. 23(a)(2). Plaintiffs may define a class as all those discriminated against illegally because they are at a loss for a more specific thread to tie claims together. But Rule 23 does not allow for such a 30,000 foot view of commonality. *See DL v. District of Columbia*, 713 F.3d 120, 126 (D.C. Cir. 2013) (Proposed class definition spoke "too broadly" because it "constitute[d] only an allegation that the class members 'ha[d] all suffered a violation of the same provision of law[.]'" (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011))).

Typicality too should be a hard hill to climb if the named plaintiffs might not be members of the class come final judgment. *See* FED. R. CIV. P. 23(a)(3); *see also Amchem Prods Inc.*, 521 U.S. at 626 n.20 (the same applies to the

adequacy prerequisite—noting that the adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a)). So too for Rule 23(b)(3)'s superiority requirement, since a class action would fail to be a superior device for resolving a dispute if the class would collapse should the plaintiffs lose on the merits. *See* FED. R. CIV. P. 23(b)(3). Even more fatal to an indeterminate class definition can be the requirement in Rule 23(c) that the district court ensure up front the "binding effect of a class judgment on members[.]" FED. R. CIV. P. 23(c)(2)(B)(vii).[4]

All that is to say that the protocol for determining if a class definition is proper is to apply the terms of Rule 23 as written. Doing so should eliminate most, if not all, genuinely fail-safe class definitions.

For those rare cases (if any) in which a truly "fail-safe" class hurdles all of Rule 23's requirements, then the problem will in all likelihood be one of wording, not substance. After all, a class of human beings cannot itself be circular. Only a class definition attempting to describe them can. For example, assume a class defined as "all workers of Company X employed in its Washington, D.C. and New York City offices between 2021 and 2023 who were unlawfully denied promotion to clerical supervisor due to enforcement of the Company X Skills Test." The one word in that definition that makes it fail safe is "unlawfully." By deleting that, the definition loses any fail-safe character and might otherwise pass all of Rule 23's requirements.

---

[4] The inability of a court to satisfy Rule 23(c)'s notice provisions could also alert the court to a Rule-based problem with a class definition.

Or consider the class "all associates employed by Law Firm Y from 2021 to 2023 who were denied their contractual bonus because Law Firm Y refused to credit pro bono hours." While the parties may litigate on the merits whether the associates had any contractual right to a bonus, any fail-safe issues at the certification stage could be addressed by simply rephrasing as a counterfactual—that is, "who would have received their contractual bonus if Law Firm Y credited pro bono hours."

The solution for cases like these is for the district court either to work with counsel to eliminate the problem or for the district court to simply define the class itself. Rule 23 charges district courts ultimately with "defin[ing] the class." FED. R. CIV. P. 23(c)(1)(B). Using that tool, the "problem [of fail-safe classes] can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner*, 669 F.3d at 825. So rather than reject a proposed class definition for a readily curable defect based on an unwritten criterion, a district court should either define the class itself or, perhaps most productively, simply suggest an alternate class definition and allow the parties to object or revise as needed.

In summary, the textual requirements of Rule 23 are fully capable of guarding against unwise uses of the class action mechanism. So we reject a rule against "fail-safe" classes as a freestanding bar to class certification ungrounded in Rule 23's prescribed criteria. Instead, district courts should rely on the carefully calibrated requirements in Rule 23 to guide their class certification decisions and the authority the Rule gives them to deal with curable misarticulations of a proposed class definition.

26

**V**

The district court in this case bypassed Rule 23's requirements and based its denial of class certification entirely on the class's "fail-safe" character. For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

*So ordered.*